[Civ. No. 8856. First Appellate District, Division Two.—May 19, 1933.]

ZURICH GENERAL ACCIDENT AND LIABILITY ASSURANCE COMPANY, LTD., Petitioner, v. THE INDUSTRIAL ACCIDENT COMMISSION, J. C. SMITH et al., Respondents.

Bronson, Bronson & Slaven for Petitioner.

A. I. Townsend for Respondents.

DOOLING, J., *pro tem.*—This is a proceeding in *certiorari* to review an award by the Industrial Accident Commission. The applicant J. C. Smith received the injuries upon which the award is based while engaged in logging operations about a lumber-mill operated by a copartnership composed of R. D. White and W. A. Minner and doing business under the firm name of White Lumber Mill. The Industrial Accident Commission found that at the time of the injuries the applicant was employed by White Lumber Mill and made the award complained of against petitioner herein as the insurance carrier of White Lumber Mill. The sole question presented by petitioner in this proceeding is whether there is any substantial evidence to support the finding of the respondent Commission that at the time of receiving his injuries Smith was an employee of its insured, White Lumber Mill.

In this behalf the evidence shows that one A. L. Nelson had an oral contract with White Lumber Mill to deliver logs to the mill at a flat rate per thousand feet and that at the time of his injury Smith was working with a crew under Nelson. Petitioner claims that Nelson was an independent contractor and that Smith was Nelson's employee and not

theirs. Were these the only facts disclosed by the evidence petitioner's position would be well founded. However, the evidence of Smith shows that he had worked for White Lumber Mill the previous year; that he asked Mr. White, one of the partners, for a job in the mill again and was told by White that as soon as the mill opened he would be glad to put him to work; that about three weeks later he went to the mill and talked to White again and White told him that the mill was not yet opened and as soon as it did open he would put him to work in the mill and that White told him in the meantime to go to work under Nelson and that his wages would be three dollars per day. Smith also testified that he understood that he was working for White Lumber Mill and that Nelson was simply his boss on the job. White gave a somewhat different version of Smith's employment with which, since this court is limited to the evidence most favorable to the award, we need not concern ourselves further than to say that White did not intend to employ Smith at the time, but intended simply to suggest that he might work for Nelson as Nelson's employee until such time as White was ready to employ him in the mill.

�rfloor Given this factual basis the first question presented is this: Was there in fact, as found by the respondent, a contract entered into by which Smith became an employee of White Lumber Mill? Taking the evidence most favorable to the award as true, we think that the answer must be in the affirmative. The fact that White did not intend to enter into a contract of employment with Smith is not controlling, if his conduct was such as to lead Smith acting as a reasonable man to believe that in fact he was being employed by White Lumber Mill. The rule in this regard is well stated in 13 C. J., page 265, section 49:

"The apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from the language employed by them, and the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges of his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is estab-

lished, and it is immaterial what may be the real but unexpressed state of his mind on the subject."

Or, as succinctly expressed by the Supreme Court of New Hampshire in *McConnell* v. *Lamontagne,* 82 N. H. 423 [134 Atl. 718, 719]:

"By the modern law of contract, the mere state of mind of the parties—with reference to the 'meeting of minds'—is not the essential object of inquiry, the terms of the promise act being determinable by an external and not by an internal standard (3 Wigmore on Evidence, 1971; *Woburn Nat. Bank* v. *Woods,* 77 N. H. 172, 174 [89 Atl. 491]; *Fitch* v. *Phoenix Ins. Co.* 82 N. H. 318 [133 Atl. 340]), or by what distinguished writers have termed the objective rather than the subjective test. (1 Williston on Contracts, 20–22a; 14 Ill. Law Rev. 525; 6 St. Louis Law Rev. 41; 33 Harv. Law Rev. 376.) The particular and nonconcurring understanding of one of the parties is usually therefore immaterial."

The application of this rule to a variety of situations is illustrated by the following cases: *Williams* v. *Burdick & Co.,* 63 Or. 41 [125 Pac. 844, 126 Pac. 603]; *Stamm* v. *Wood,* 86 Or. 174 [168 Pac. 69]; *Davern* v. *American Mut. Liability Ins. Co.,* 241 N. Y. 318 [150 N. E. 129, 131, 43 A. L. R. 522]; *Taplin & Rowell* v. *Clark,* 89 Vt. 226 [95 Atl. 491]; *Embry* v. *Hargadine etc. Co.,* 127 Mo. App. 383 [105 S. W. 777]; *Farnum* v. *Whitman,* 187 Mass. 381 [73 N. E. 473]; *Washington Shoe Mfg. Co.* v. *Duke,* 126 Wash. 510 [218 Pac. 232, 37 A. L. R. 611]; *Allen* v. *Bissinger & Co.,* 62 Utah, 226 [219 Pac. 539, 31 A. L. R. 376]. See, also, 1 Page on Contracts, p. 110, sec. 83; 1 Williston on Contracts, pp. 18–24, secs. 20, 21; 4 Wigmore on Evidence, 2d ed., p. 191, sec. 1971, subd. a.

We are satisfied that the finding that Smith was employed by White Lumber Mill finds sufficient support in Smith's evidence of White's conduct at the time he was employed which induced in Smith the reasonable belief that he was being employed by the lumber-mill and not by Nelson.

The fact that Nelson was in fact an independent contractor could no more change this contract relation between Smith and the lumber-mill than could White's unexpressed intention that Smith should be employed by Nelson and not by himself. At most Smith would be in a

position analogous to that of an employee lent by a general to a special employer. In such a situation it is settled that the general employer is liable in any event to pay compensation by reason of the contract of employment, and the special employer may become likewise liable by reason of an assumption of control. (*Employers' Liab. Assur. Corp. Ltd.* v. *Industrial Acc. Com.*, 179 Cal. 432 [177 Pac. 273]; *Famous Players etc. Corp.* v. *Industrial Acc. Com.*, 194 Cal. 134 [228 Pac. 5, 34 A. L. R. 765]; *Diamond Drill Cont. Co.* v. *Industrial Acc. Com.*, 199 Cal. 694 [250 Pac. 862]; *Independence Ind. Co.* v. *Industrial Acc. Com.*, 203 Cal. 51 [262 Pac. 757].)

The injured employee is making no complaint of the failure to make an award against Nelson and we do not understand that any complaint is being made on that ground by petitioner. We have, therefore, not considered that question. The only question urged by petitioner is the one which we have discussed, viz.: does the evidence support the finding that at the time of his injury Smith was an employee of White Lumber Mill?

The award is affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.